RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0108p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

BARBARA FLETCHER; TIMOTHY PHILPOT; MARCIA FINK; LUCINDA SMITH,

> *Plaintiffs-Appellees*,

*v.*

HONEYWELL INTERNATIONAL, INC.,

> *Defendant-Appellant*.

┐
│
│
│
│
> No. 17-3277
│
│
│
│
┘

---

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 3:16-cv-00302—Walter H. Rice, District Judge.

Argued: December 5, 2017

Decided and Filed: June 8, 2018

Before: CLAY, GIBBONS, and BUSH, Circuit Judges.

---

## COUNSEL

**ARGUED:** K. Winn Allen, KIRKLAND & ELLIS LLP, Washington, D.C., for Appellant. John G. Adam, LEGGHIO & ISRAEL, P.C., Royal Oak, Michigan, for Appellees. **ON BRIEF:** K. Winn Allen, Craig S. Primis, P.C., Matthew P. Downer, KIRKLAND & ELLIS LLP, Washington, D.C., for Appellant. John G. Adam, Stuart M. Israel, LEGGHIO & ISRAEL, P.C., Royal Oak, Michigan, William Wertheimer, LAW OFFICE OF WILLIAM WERTHEIMER, Bingham Farms, Michigan, for Appellees.

GIBBONS, J., delivered the opinion of the court in which CLAY and BUSH, JJ., joined. CLAY, J. (pg. 16), delivered a separate concurring opinion.

––––––––––––––––

**OPINION**

––––––––––––––––

JULIA SMITH GIBBONS, Circuit Judge.  Plaintiffs, on behalf of themselves and other similarly situated retirees, retirees' surviving spouses, and eligible dependents, filed suit against Defendant Honeywell International, Inc. to enforce their rights to retirement healthcare benefits under a series of Collective Bargaining Agreements ("CBAs").  The district court held that the CBAs were ambiguous and relied on extrinsic evidence for its conclusion that the parties intended retiree healthcare benefits to vest for life.  Because we hold that the CBAs are unambiguous, we reverse the district court's judgment.

I.

A.

Plaintiffs are retirees who worked at Honeywell's plant in Greenville, Ohio.  Honeywell owned and operated the Greenville plant from 1960 until it sold the plant in 2011.  While employed at the Greenville plant, plaintiffs were members of a bargaining unit represented by the Fram Employees' Independent Union ("FEIU") until 2000, and after 2000 by the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") and UAW Local 2413.

The bargaining unit and Honeywell negotiated a series of CBAs containing the terms that would govern employer-employee relations.  Although Honeywell sold the plant in 2011, the final CBA did not expire until May 22, 2014.  Honeywell continued to provide healthcare benefits for retirees and their spouses after the CBA expired, but on December 28, 2015, it sent them a letter informing them that it "intend[ed] to terminate the retiree medical and prescription drug coverage currently provided to you and your covered dependents as of December 31, 2016."  DE 15-2, Defendant's Ex. B: 12/28/2015 Letter, Page ID 393.  Plaintiffs filed suit on behalf of themselves and other similarly situated retirees, retirees' surviving spouses, and eligible

dependents[1] under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and Section 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, claiming that Honeywell was obligated under the CBAs to provide retirees with lifetime healthcare benefits.

Honeywell argued that the 2011 CBA's general durational clause, which stated that the agreement remained in effect until May 22, 2014, governed its duty to provide retiree healthcare benefits. Thus, it claimed that plaintiffs had no right to healthcare benefits beyond May 22, 2014. It did promise to continue providing healthcare coverage to certain surviving spouses and dependents since the 2011 CBA expressly promised that "[u]pon the death of a retiree, the Company will continue coverage for the spouse and dependent children for their lifetime," provided that particular conditions were met. JA 18, 2011 CBA, at GR001053.

B.

Honeywell filed a 12(b)(6) motion to dismiss for failure to state a claim, arguing that under *M&G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926 (2015) and *Gallo v. Moen Inc.*, 813 F.3d 265 (6th Cir. 2016), the district court was required to dismiss plaintiffs' LMRA and ERISA claims. Honeywell argued that the Greenville CBAs are legally indistinguishable from those in *Gallo*: they contain no clear language promising to provide lifetime retiree healthcare benefits while explicitly vesting *other* benefits for life, and they are governed by general durational clauses. The district court denied Honeywell's motion to dismiss.

Although the district court acknowledged that the CBAs did not expressly provide for vested retiree healthcare benefits, it pointed to language from this circuit emphasizing that the Supreme Court's *Tackett* decision does not mean that "the *absence* of such specific language, by itself, evidences an intent *not* to vest benefits . . . ." *Tackett v. M&G Polymers USA, LLC*, 811 F.3d 204, 209 (6th Cir. 2016). The district court thus found that the lack of express vesting language was not dispositive.

---

[1]Plaintiffs filed their complaint as a class action complaint, but no motion for class certification was filed. However, the district court reasoned that plaintiffs' failure to file a class certification motion would not alter the outcome of the case, since a verdict in plaintiffs' favor would impact all similarly-situated individuals.

The district court further identified "critical differences" between the instant case and *Gallo*. DE 29, Decision and Entry Overruling Mot. to Dismiss, Page ID 953. The most important difference, the court reasoned, was the language in Honeywell's CBA promising lifetime healthcare benefits to retirees' surviving spouses and dependents. Article 33, Section D.5 of the 2011 CBA states: "[u]pon the death of a retiree, the Company will continue coverage for the spouse and dependent children for their lifetime," provided certain conditions are met. JA 18, 2011 CBA, at GR001053. According to the district court, such express vesting of lifetime healthcare benefits for surviving spouses and dependents strongly implied that the parties also intended to vest lifetime healthcare benefits for the retirees themselves. While not dispositive, the court found that the express language vesting healthcare benefits for surviving spouses and dependents was "highly unusual" and created ambiguity about the parties' intentions. DE 29, Decision and Entry Overruling Mot. to Dismiss, Page ID 957.

The district court also noted that the *Gallo* CBA contained a reservation-of-rights clause, while the 2011 Honeywell CBA does not. Furthermore, unlike the *Gallo* CBA, the Honeywell CBA does not have a provision stating that "*continued* [healthcare benefits] will be provided . . . ." *Gallo*, 813 F.3d at 269 (emphasis added). In *Gallo*, we held that the use of "continued" as a modifier suggested that retiree healthcare benefits were not vested because if they were, the CBA would not need to "continue" them.

Lastly, the district court relied on Article 33, Section D.1 of the 2011 Honeywell CBA, which provides: "[e]mployees ages 50–55 with 30 years of service, who leave the company prior to becoming pension eligible, will be eligible for retiree health care benefits when they commence their pension benefits (age 55 or later)." JA 18, 2011 CBA, at GR001051. The court agreed with plaintiffs that intent to vest could be implied from the fact that eligibility for healthcare benefits could arise years after the CBAs expired.

## C.

Based on its conclusion that the CBAs were ambiguous under ordinary principles of contract law, the district court conducted an evidentiary hearing to resolve the ambiguities. It considered extrinsic evidence from both the pre- and post-2000 CBA negotiations that largely

consisted of testimony from various participants in the negotiation process. After the hearing, the district court concluded that plaintiffs proved by a preponderance of the evidence that Honeywell agreed to provide lifetime healthcare benefits to retirees at the Greenville plant. It permanently enjoined Honeywell from terminating healthcare benefits for all putative class members who retired from the Greenville plant before June 1, 2012, and for their eligible spouses and dependents. Honeywell appealed.

## II.

### A.

After a bench trial, this court reviews the district court's findings of fact for clear error and its conclusions of law *de novo*. *T. Marzetti Co. v. Roskam Baking Co.*, 680 F.3d 629, 633 (6th Cir. 2012). Questions of contract interpretation are legal questions that this court reviews *de novo*. *See Royal Ins. Co. v. Orient Overseas Container Line Ltd.*, 514 F.3d 621, 634 (6th Cir. 2008).

### B.

Plaintiffs filed suit under LMRA § 301 and ERISA § 502. LMRA § 301 gives federal district courts jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . ." 29 U.S.C. § 185. ERISA § 502 allows a participant in an "employee welfare benefit plan" to bring a civil action "to enforce his rights under the terms of the plan . . . ." 29 U.S.C. §§ 1002, 1132. ERISA "explicitly exempts welfare benefits plans" from its detailed rules for vesting pension plans, so employers are "generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." *Tackett*, 135 S. Ct. at 933 (quoting *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995)). Unlike pension plans, then, health benefits are purely a matter of contract and must be "established and maintained pursuant to a written instrument." *Id.* (citations omitted). Thus, finding for plaintiff-retirees in this case requires us to determine that Honeywell violated a contract between itself and the labor organization representing the retirees—a contract that gave the retirees "rights" to lifetime healthcare benefits.

The contracts governing this case are the CBAs negotiated by Honeywell and the labor organizations representing Honeywell's employees. We must "interpret collective-bargaining agreements, including those establishing ERISA plans, according to ordinary principles of contract law, at least when those principles are not inconsistent with federal labor policy." *Tackett*, 135 S. Ct. at 933. "[W]e look first to the CBAs' explicit language for clear manifestations of the parties' intent . . . . If, however, the plain language is susceptible to more than one interpretation, we then consider extrinsic evidence to supplement the parties' intent." *Moore v. Menasha Corp.*, 690 F.3d 444, 451 (6th Cir. 2012). Plaintiffs can succeed on their claims only if they prove one of two things: (1) the CBAs unambiguously provide retirees with lifetime healthcare benefits, or (2) the CBAs are ambiguous, and the extrinsic evidence demonstrates that the parties intended to vest retiree healthcare benefits.

## C.

Our circuit's law on interpreting CBAs to determine whether retiree healthcare benefits have vested has recently undergone significant changes. Until 2015, we followed the "*Yard-Man* framework," named for the case *UAW v. Yard-Man, Inc.*, 716 F.2d 1476 (6th Cir. 1983). In *Yard-Man*, this court interpreted a CBA to provide for vested lifetime healthcare benefits for retirees. *Id.* at 1479. As it evaluated the CBA, the *Yard-Man* court purported to apply "traditional rules for contractual interpretation [as long as they are] consistent with federal labor policies." *Id.* However, in *Tackett*, the Supreme Court found numerous faults with *Yard-Man* and its progeny, specifically noting that "*Yard-Man* violates ordinary contract principles by placing a thumb on the scale in favor of vested retiree benefits in all collective-bargaining agreements." *Tackett*, 135 S. Ct. at 935.

The Court admonished the Sixth Circuit to look to record evidence of industry customs or usages, not to our own assumptions about the intentions of employees, unions, and employers negotiating retiree benefits. *Id.* It then criticized the *Yard-Man* cases for their "refus[al] to apply general durational clauses to provisions governing retiree benefits," *id.* at 936, emphasizing "the traditional principle that contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement," *id.* at 937 (internal quotation marks and citation

omitted).  It stressed that "courts should not construe ambiguous writings to create lifetime promises."  *Id.* at 936.

In April 2017, we released a trio of decisions, all addressing the issue of whether particular CBAs provided for vested retiree healthcare benefits: *Int'l Union, United Auto., Aerospace and Agric. Implement Workers of America (UAW) v. Kelsey-Hayes Co.*, 854 F.3d 862 (6th Cir. 2017), *Reese v. CNH Indus. N.V.*, 854 F.3d 877 (6th Cir. 2017), and *Cole v. Meritor, Inc.*, 855 F.3d 695 (6th Cir. 2017).  In *Cole*, we found the CBA to be materially indistinguishable from the one in *Gallo*; thus, we held that the CBA unambiguously did not provide for vested retiree healthcare benefits.  *Cole*, 855 F.3d at 700–02.  However, in *Kelsey-Hayes* and *Reese*, we found the CBAs ambiguous and looked to extrinsic evidence, ultimately concluding that the parties intended retiree healthcare benefits to vest.  *Kelsey-Hayes*, 854 F.3d at 869–71; *Reese*, 854 F.3d at 883.  In *Kelsey-Hayes*, we relied chiefly on the fact that the CBA at issue "include[d] three distinct kinds of durational language for specific provisions": specific-duration periods for less than life, specific-duration periods for life, and the healthcare provisions, which stated that healthcare "shall be continued" without clarifying for how long.  *Kelsey-Hayes*, 854 F.3d at 868. Lastly, in *Reese*, we held that the CBA's general durational clause and the absence of specific durational language for healthcare benefits created ambiguity because "the parties in this case carved out certain benefits, such as life insurance and healthcare insurance, and stated that those coverages ceased at a time different than other provisions of the CBA."  *Reese*, 854 F.3d at 882. We emphasized that under *Tackett*, we could not infer an affirmative intent to vest from the absence of specific durational language for healthcare benefits, but reasoned that such absence did create *ambiguity*, allowing us to consult extrinsic evidence.  *Id.* 882–83.

But on February 20, 2018, the Supreme Court reversed our decision in *Reese* and in a *per curiam* opinion explained that "[*Reese*'s] analysis cannot be squared with *Tackett*."  *CNH Indus. N.V. v. Reese*, 583 U.S. ___ (2018), slip op. at 1.  The Court saw *Reese* as impermissibly applying "the same *Yard-Man* inferences [the Sixth Circuit] once used to presume lifetime vesting . . . to render a collective bargaining agreement ambiguous as a matter of law."  *Id.* Absent the *Yard-Man* inferences, the Court reasoned that *Reese* was "straightforward"—the CBA contained a general durational clause, and "[n]o provision specified that the health care

benefits were subject to a different durational clause." *Id.* at 8. Therefore, the CBA did not provide retirees with vested healthcare benefits. *Id.* And on February 26, 2018, in light of this decision, the Court also vacated our judgment in *Kelsey-Hayes* and remanded the case "for further consideration." *Kelsey-Hayes Co. v. Int'l Union*, 138 S. Ct. 1166 (2018).

The Court's *Reese* opinion indicates that where a CBA has a general durational clause, that clause must be enforced absent a specific alternative end date provided for retiree healthcare benefits, or some other clear indication in the CBA that the general durational clause is not intended to apply to retiree healthcare. Two of our most recent cases align with this principal, *Watkins v. Honeywell International, Inc.* and *Cooper v. Honeywell International, Inc*. In *Watkins*, the CBA stated, "[f]or the duration of this Agreement, the Insurance Program shall be that which is attached hereto, hereinafter referred to as the Program." 875 F.3d 321, 325 (6th Cir. 2017). Based on the language expressly limiting insurance benefits to "the duration of this Agreement," we unanimously held that the CBA was unambiguous and thus, "Honeywell's obligation to pay for its Fostoria retirees' healthcare ended when the agreement expired." *Id.* at 322.

In *Cooper*, unlike in *Watkins*, the CBA did not contain express language limiting retiree healthcare benefits to the agreement's expiration date; in fact, it stated that "Retirees under age 65 . . . will continue to be covered under the [health insurance plan], *until age 65* . . . ." 884 F.3d 612, 614 (6th Cir. 2018) (emphasis added). Nonetheless, we reversed the district court's grant of a preliminary injunction enjoining Honeywell from terminating healthcare benefits. *Id.* In reversing the preliminary injunction, we held that the retirees were unlikely to succeed on the merits because the CBA was governed by a general durational clause and the "until age 65" language "did not clearly provide an alternative end date" for the healthcare benefits. *Id.* Instead, we concluded that the promise to continue providing benefits until the retirees reached age 65 only lasted until the CBA expired. *Id.* at 618–21.

Thus, from all of this circuit's precedent and the Supreme Court's holdings in *Tackett* and *Reese*, we can distill a clear rule—a CBA's general durational clause applies to healthcare benefits unless it contains clear, affirmative language indicating the contrary.

III.

Two sets of CBAs are at issue in this case: the CBAs negotiated before 2000, when the FEIU was the union representing the plant employees, and the CBAs negotiated after 2000, between Honeywell and the UAW. After reviewing the CBAs in light of the applicable case law, we conclude that neither set is ambiguous.

A.

In its order granting plaintiffs a permanent injunction, the district court stated that "[i]t is undisputed that [the] pre-2000 CBAs contain no language indicating that retiree healthcare benefits were vested, or that Honeywell was obligated to provide lifetime coverage to retirees or their family members." DE 58, Op. and Order, Page ID 2993. Despite this finding—which the retirees do not challenge in their brief—the court's injunction applied to all "putative class members who retired from the Greenville, Ohio, plant before June 1, 2012, and for their eligible spouses and dependents." DE 58, Op. and Order, Page ID 3023–24. Thus, its injunction prevents Honeywell from terminating benefits even for those putative class members who retired before 2000, under the unambiguous CBAs.

Since health benefits are purely contractual in nature, *see, e.g.*, *Cole*, 855 F.3d at 698, if the pre-2000 CBAs are in fact unambiguous in their failure to provide for vested retiree healthcare benefits, the district court's injunction should be modified. A review of the pre-2000 CBAs confirms the district court's statement that they are unambiguous. For example, the 1997 CBA contained only the following two provisions regarding retiree health benefits:

> G. Employees retiring on or after January 1, 1985 (except those eligible for deferred vested pension benefits) will be eligible to enroll for the Blue Cross/Blue Shield Gold Standard Comprehensive Health Care Plan.

> H. The Company agrees to pay the premium cost of single coverage for any retiree enrolled for Blue Cross/Blue Shield Health Care Coverage. Retirees enrolled for family coverage will be required to pay the difference in premium costs between single and family coverage.

JA 14, 1997 CBA, at GR000758–59. The 1997 CBA also had a general durational clause providing that it would remain in effect until May 22, 2000. The other pre-2000 CBAs contain language that is materially the same.

Nothing in these provisions suggests intent to vest healthcare benefits. They contain no promise to provide benefits for the lifetime of the retiree and no indication that they are exempt from the general durational clause governing the agreement. They simply provide that retirees will be eligible for a particular healthcare plan and that the company will pay the premium costs for that plan. Further, the pre-2000 CBAs do expressly provide for other kinds of vested benefits—for example, the 1997 CBA refers to "deferred *vested* pension benefits." JA 14, 1997 CBA, at GR000758 (emphasis added). "[W]e must assume that the explicit guarantee of lifetime benefits in some provisions and not others means something." *Gallo*, 813 F.3d at 270. Absent any suggestion to the contrary, both provisions are time-limited by the CBA's general durational clause. The pre-2000 CBAs therefore unambiguously do not provide for vested retiree healthcare benefits.

## B.

We also hold that the post-2000 CBAs are unambiguous and do not provide for vested retiree healthcare benefits. The 2011 CBA[2] states: "Employees ages 50–55 with 30 years of service, who leave the company prior to becoming pension eligible, will be eligible for retiree health care benefits when they commence their pension benefits (age 55 or later)." JA 18, 2011 CBA, at GR001051. The agreement also contains a provision capping Honeywell's healthcare contributions, not to take effect until 2012. Finally, Honeywell promises to "continue coverage for the spouse and dependent children for their lifetime" after the retiree's death. *Id.* at GR001053. There is no similar promise to provide lifetime healthcare for the retirees themselves.

As an initial matter, the district court was correct when it noted that the absence of specific vesting language does not automatically signify intent to terminate those benefits when the agreement expires. *See Tackett*, 811 F.3d at 209. However, the absence of such language

---

[2]The language in the other post-2000 CBAs is the same in all material respects.

also does not automatically signify ambiguity. *See Reese*, 583 U.S. ___ (2018), slip op. at 5–7. After reviewing the CBAs, we conclude that the features of the post-2000 CBAs that the district court used to find ambiguity actually suggest that the CBAs are *unambiguous*.

In finding the post-2000 CBAs ambiguous, the district court relied primarily on their provision of lifetime healthcare benefits for surviving spouses and dependents. Honeywell argues that contrary to the district court's interpretation, the fact that the agreement explicitly provides lifetime healthcare benefits for surviving spouses and dependents shows that the parties knew how to communicate their intent to vest such benefits for life. In response to the district court's conclusion that providing benefits to surviving spouses and dependents but not the actual retirees is "inconceivable," Honeywell points out that "limiting [its] lifetime obligation to only surviving spouses and dependents would have made eminent sense," because it would be much less expensive than providing lifetime healthcare for all retirees but still protect "the most vulnerable population in its care." CA6 R. 19, Appellant Br., at 34.

We have not yet considered a CBA that grants lifetime healthcare benefits to surviving spouses and dependents but is silent on the duration of healthcare benefits for the retirees themselves. Honeywell refers us to a Second Circuit case, *Bouboulis v. Transp. Workers Union of America*, 442 F.3d 55 (2d Cir. 2006). In *Bouboulis*, spouses were promised lifetime health benefits "upon the death of a plan participant." 442 F.3d at 62. The Second Circuit held that "the promise to the surviving spouses does not require lifetime benefits for the Retirees, and does not constitute affirmative language that could reasonably be interpreted as creating a promise to vest the Retirees' benefits." *Id.* at 62–63. It affirmed the district court's grant of summary judgment to the employer since the disputed language "concerns only the benefits of spouses of deceased participants, *not* the benefits of the participants themselves." *Id.* at 63 (citing *Bouboulis v. Transp. Workers Union*, 2004 WL 1555129, at *4 (S.D.N.Y. July 9, 2004)).

Honeywell's arguments, and the reasoning of the Second Circuit, are persuasive. If the parties included language expressly granting lifetime healthcare benefits to surviving spouses and dependents in the CBA, this tends to show that they knew how to provide for vested benefits and chose not to for retirees. As we reasoned in *Gallo*, "we must assume that the explicit

guarantee of lifetime benefits in some provisions and not others means something." *Gallo*, 813 F.3d at 270. The CBA here explicitly provides for lifetime benefits for surviving spouses and dependents only, and so the retirees cannot claim a contractual right to such benefits.

The cases that plaintiff-appellees cite in support of the district court's conclusion that the surviving-spouse provision creates ambiguity are unavailing. They cite an unpublished decision from this circuit, *Winnett v. Caterpillar, Inc.*, where we stated that "there is no reason for the spouses to have thought they would get benefits that *exceeded* those of the retirees from whom their benefits derive . . . ." 510 F. App'x 417, 421 (6th Cir. 2013). Not only was *Winnett* decided before the Supreme Court abrogated *Yard-Man* in 2015, *see Tackett*, 135 S. Ct. at 933, but the facts of that case are completely different from the facts here—in *Winnett*, surviving spouses challenged Caterpillar's deduction of healthcare premiums from retirees' pensions, and the issue was whether the statute of limitations had expired for their claim. 510 F. App'x at 418–19. Nor do the other two cases from this circuit help plaintiffs. *UAW v. Loral Corp.*, which the district court cited favorably in its decision overruling Honeywell's motion to dismiss, was decided when *Yard-Man* was the governing case for CBA interpretations. *See Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., UAW v. Loral Corp.*, 873 F. Supp. 57, 62–64 (N.D. Ohio 1994) (citing *Yard-Man* numerous times). And *Sloan v. Borgwarner, Inc.* actually granted summary judgment for the employer, not the retirees. No. 09-cv-10918, 2016 WL 7107228, at *1 (E.D. Mich. Dec. 5, 2016).[3]

We acknowledge that the arrangement in the CBA—lifetime benefits for surviving spouses and dependents but not for retirees—is, as the district court put it, "highly unusual." DE 29, Decision and Entry Overruling Mot. to Dismiss, Page ID 957. The average person would find it very strange if her spouse and dependents were to receive lifetime healthcare benefits only after she has died, while prior to her death neither she nor her family is entitled to any benefits. But this strangeness cannot overcome the simple fact that the agreements expressly provide lifetime healthcare for surviving spouses and dependents *but not* for the retirees themselves. Additionally, as Honeywell points out, CBA terms are often the product of compromise. As a

---

[3]The other cases plaintiff-appellees cite are not from this circuit, were decided before the Supreme Court's decision in *Tackett*, and are of otherwise limited usefulness.

compromise, Honeywell may have decided it would be much cheaper to provide lifetime healthcare benefits only to a limited class rather than to *all* retirees and their spouses and dependents. The important point, however, is that the CBA clearly promises lifetime benefits to surviving spouses and dependents but not to retirees.  We also find it noteworthy that the 2011 CBA refers to "deferred vested pension benefits" several times, but never uses "vested" to describe retiree healthcare benefits.  Such a distinction points to the conclusion that we reached in *Gallo*—"[t]he difference in language demands a difference in meaning."  *Gallo*, 813 F.3d at 270.

There is only one feature of the surviving-spouse provision that arguably raises an ambiguity: it states, "[u]pon the death of a retiree, the Company will *continue* coverage for the spouse and dependent children for their lifetime . . . ."  JA 18, 2011 CBA, at GR001053 (emphasis added).  Read naturally, this phrase implies that lifetime healthcare benefits for the spouse of a deceased retiree proceed from the period during which the retiree was receiving healthcare benefits.  Thus, if the retiree did not have healthcare when he died, then his spouse's lifetime healthcare would not be a continuation of coverage.  Why, then, doesn't this "continue" language create ambiguity as to whether the retirees had healthcare for life?  Because not all spouses of retirees are guaranteed healthcare for life upon the death of their retiree-spouse.

The post-2000 CBAs promised to provide lifetime healthcare to a retiree's spouse "[u]pon the death of a retiree."  But like the other promises in the CBAs, this promise expired when the CBA expired, on May 22, 2014.  Thus, if a retiree died during the term of a CBA that contained the surviving spouse promise, the surviving spouse is entitled to lifetime healthcare benefits.  But if a retiree died after the last CBA expired, then Honeywell's promise has expired, and Honeywell is not obligated to provide the surviving spouse with lifetime healthcare benefits.  The reality for plaintiffs here is that the CBAs expressly promise to provide lifetime benefits for particular surviving spouses of retirees—those whose retiree-spouse died during the term of a CBA that contained the surviving spouse provision.  They do not make that promise to the retirees themselves.  In the absence of such a promise, the general durational clause should govern the agreement.

Aside from the surviving spouse provision, the district court identified several other features of the post-2000 CBAs that it believed contributed to their ambiguity. These features are insufficient to overcome the presence of a general durational clause. The fact that Honeywell's contribution caps became effective after the CBAs expired has been rejected by this circuit as a justification for finding ambiguity. *See Cole*, 855 F.3d at 701 ("[T]he caps section of the 2000 CBA indicates that the parties contemplated that retiree healthcare benefits would continue . . . . But the fact that they anticipated, or even hoped, that these benefits would continue does not mean that Meritor is bound to provide these benefits for the life of the retirees."); *Watkins*, 875 F.3d at 327 ("[T]hat the caps contemplated healthcare benefits into the future did not mean that Honeywell had promised to provide benefits forever."). Furthermore, as Honeywell pointed out in its 12(b)(6) motion and as we stated in *Watkins*:

> There is a good reason for a company to adopt healthcare caps, even if caps take effect only far in the future: because companies must recognize as a liability on their balance sheet the present value of their anticipated future healthcare costs, caps keep companies from needing to recognize millions (or more) in future potential liability.

*Watkins*, 875 F.3d at 327 (citing *Wood v. Detroit Diesel Corp.*, 607 F.3d 427, 428–29 (6th Cir. 2010)).

The district court also gave weight to plaintiffs' argument that Art. 33, Section D.1 of the CBA, tying eligibility for pension benefits to eligibility for healthcare benefits, implied intent to vest because a retiree could become eligible for healthcare benefits up to fifteen years after the CBA expired. The district court's rationale here is erroneous because, as we have held, the fact that Honeywell anticipated providing healthcare benefits in the future does not mean that Honeywell is bound to provide such benefits forever. *See Cole*, 855 F.3d at 701; *Watkins*, 875 F.3d at 327. While there are minor differences between the Honeywell CBA and the CBA in *Gallo*, such as the absence of a reservation-of-rights clause in the Honeywell CBA, both agreements share one crucial feature: a general durational clause. None of the features to which the district court points are sufficient to overcome that clause here.

Under the general durational clause in the 2011 Honeywell CBA, the agreement expired on May 22, 2014. Although "a contract's general-durational clause will not always apply to a

promise to provide healthcare," *Watkins*, 875 F.3d at 325, "ordinary principles of contract law . . . dictate that 'contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement.'" *Cole*, 855 F.3d at 700 (quoting *Gallo*, 813 F.3d at 279). Because the post-2000 CBAs do not contain any features overriding the general durational clauses, the general durational clauses should govern. We therefore hold that the district court erred by finding the CBAs ambiguous.

## IV.

The parties devote a great deal of time to disputing the significance of the extrinsic evidence in this case. Because the CBAs in this case are unambiguous, however, the parties' arguments about the extrinsic evidence can no longer be considered. *See, e.g.*, *Tackett*, 135 S. Ct. at 938 (Ginsburg, J., concurring) ("[W]hen the contract is ambiguous, a court may consider extrinsic evidence to determine the intentions of the parties."); *Watkins*, 875 F.3d at 323 ("We do not look at extrinsic evidence unless the contract is ambiguous."). Thus, our finding that the CBAs unambiguously do not provide for lifetime retiree healthcare benefits ends the inquiry.

## V.

For the foregoing reasons, we reverse the judgment of the district court.

———————————

**CONCURRENCE**

———————————

CLAY, Circuit Judge, concurring.  I reluctantly concur because I am required to do so by binding case law.  However, it is not obvious that the intent of the parties was as clearly expressed as our cases indicate.  Indeed, the agreements at issue appear on their face to be ambiguous, and they were drafted prior to the line of cases beginning with the Supreme Court's decision in *M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926 (2015), which completely upended the way that our Circuit interprets the vesting of benefits in collective-bargaining agreements.  I believe that the Court should permit the admission of extrinsic evidence in this case in order to ascertain the intent of the parties.  Nonetheless, our cases preclude us from doing so.

Now, at least, the unions and the retirees that they represent are on notice as to what their agreements must say in order to vest retiree healthcare benefits.  Although it seems less than fair to impose this new, heightened standard upon these retirees, that is what the cases require, and I therefore reluctantly concur in the majority opinion.