NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0207n.06

Case No. 20-1174

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Apr 20, 2021
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| MICHIGAN EDUCATION ASSOCIATION FAMILY RETIRED STAFF ASSOCIATION, a Michigan nonprofit corporation; GLENNA PARKER; CAROLEE SMITH, | ) ) ) ) |  |
|  | ) |  |
| Plaintiffs-Appellants, | ) |  |
|  | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
|  | ) | COURT FOR THE WESTERN |
| MICHIGAN EDUCATION ASSOCIATION, a union affiliated with local unions that represent public school employees and other employees in the state of Michigan; MICHIGAN EDUCATION SPECIAL SERVICES ASSOCIATION, a Michigan nonprofit corporation; MEA FINANCIAL SERVICES, a Michigan corporation, | ) ) ) ) ) ) ) ) | DISTRICT OF MICHIGAN

OPINION |
|  | ) |  |
| Defendants-Appellees. | ) |  |

BEFORE: COOK, BUSH, and NALBANDIAN, Circuit Judges.

JOHN K. BUSH, Circuit Judge. This case presents yet another iteration of the question whether retirement healthcare benefits have vested under collective bargaining agreements and related documents. Defendants are several affiliated organizations in Michigan that began to make changes to their retirement healthcare benefits in January 2019. Later that year, current and former employees of those organizations sought a preliminary injunction to stop further changes, arguing that those benefits were vested. The district court denied the injunction, finding that Plaintiffs

were unlikely to succeed on the merits of their case. Their claims rest on a letter of understanding signed by purported representatives of the relevant employers and employees and on language in healthcare plan documents. Because the district court did not determine whether the letter of understanding is an enforceable contract apart from the collective bargaining agreements, we vacate and remand the denial of the preliminary injunction. But because the plan documents do not clearly manifest an intent for the retirement healthcare benefits to vest, the district court correctly determined that the plan documents do not support granting Plaintiffs a preliminary injunction.

I.

Defendants are closely affiliated Michigan organizations. Michigan Education Association is a union; Michigan Education Special Services Association and MEA Financial Services are non-profit organizations that provide health insurance and retirement programs to MEA and its affiliates' employees and retirees. Plaintiff Michigan Education Association Family Retired Staff Association is a nonprofit corporation whose members are Defendants' and their predecessors' retired employees and their families. Plaintiffs Glenna Parker and Carolee Smith are also retired employees of Defendants. Many of RSA's members, including Parker and Smith, were members of collective bargaining units represented by the United Staff Organization or its predecessors and affiliates. USO and Defendants entered into a series of collective bargaining agreements, which specified that Defendants would provide eligible retirees with healthcare benefits.

Plaintiffs contend that USO and Defendants understood and agreed that the retiree healthcare benefits would vest for life upon retirement. They argue that this understanding is shown in two ways: first, it was expressly committed to writing in a signed "Letter of Understanding," a separate enforceable contract from the CBAs. Second, it is explicitly stated in

plan documents, adopted as part of Defendants' retiree medical plan under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1191c, that retiree insurance benefits become vested for participants who satisfy the necessary age and service conditions.

The LOU was signed in 1993 by purported representatives of Defendants and USO. It provides in pertinent part: "The parties acknowledge that retiree fringe benefits described in Schedules A and B become vested for life on commencement of monthly retirement benefits under the MEA/MESSA/MEDNA/MEA-FS Staff Retirement Plan and Trust." The plan documents, specifically language from the Amended and Restated MEA, MESSA, MEA Financial Services Retiree Health Benefit Plan and Trust, provide in pertinent part:

> <u>Vesting</u>. A Participant whose retirement benefits are the subject of a collective bargaining agreement with an Employer Member shall become vested in the post-retirement health benefit described in Article V in accordance with the terms of the relevant sections of pertinent collective bargaining agreement(s), copies of which are attached as Schedule A. A Participant whose retirement benefits are not the subject of a collective bargaining agreement with an Employer Member shall become vested in the post-retirement health benefit described in Article V in accordance with the terms of Schedule B.

In January 2019, Defendants began to change retiree healthcare benefits. In July 2019, Defendants notified retirees that more changes would be made but postponed implementation until January 2020 to provide time to negotiate. After negotiations broke down, Plaintiffs filed suit in federal court seeking a temporary restraining order and a preliminary injunction to prevent Defendants from implementing the new policies. The district court denied the motion for a temporary restraining order. So, in January 2020, Defendants implemented their new policies.[1]

---

[1] The relevant changes included (1) replacing the prescription plan with a plan charging increased prices, (2) eliminating Medicare Part B premium reimbursements for retirees' spouses and dependents and reducing it for retirees, (3) raising deductibles for retirees under the age of 65, and (4) increasing deductibles and decreasing annual limits on retirees' dental and vision coverage.

After taking testimony and hearing oral argument, the district court also denied Plaintiffs' motion for a preliminary injunction. It held that none of Plaintiffs' claims are likely to succeed on the merits, which it deemed dispositive. The court nonetheless considered the other preliminary injunction factors, finding that Plaintiffs did not show irreparable harm sufficient to overcome their failure to show likelihood of success on the merits and that the public interest favoring Plaintiffs did not tip the scales in their favor. Plaintiffs appeal the denial of the preliminary injunction.

II.

We review a district court's ruling on a motion for a preliminary injunction for an abuse of discretion. *Daunt v. Benson*, 956 F.3d 396, 406 (6th Cir. 2020). This entails reviewing factual findings for clear error and legal conclusions de novo. *Id.* Whether a party is likely to succeed on a claim's merits is a conclusion of law. *Fowler v. Benson*, 924 F.3d 247, 256 (6th Cir. 2019).

The decision to grant a preliminary injunction requires weighing whether the moving "party (1) 'establish[ed] that he is likely to succeed on the merits,' (2) 'that he is likely to suffer irreparable harm in the absence of preliminary relief,' (3) 'that the balance of equities tips in his favor,' and (4) 'that an injunction is in the public interest.'" *Id.* (original alteration) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

Because the district court's decision to deny Plaintiffs' motion for a preliminary injunction rested on the likelihood of success on the merits, we consider whether either of Plaintiffs' claims is likely to succeed.[2]

A. THE LOU CLAIM

Plaintiffs contend that the LOU is an enforceable contract, separate from the CBAs, that establishes that healthcare benefits vested. Defendants disagree. Whether a contract exists is a

---

[2] Plaintiffs have not appealed the district court's denial of the preliminary injunction based on their claims of equitable estoppel or breach of oral and written promises made outside of any particular plan.

factual question. *See Bobbie Brooks, Inc. v. Int'l Ladies' Garment Workers Union*, 835 F.2d 1164, 1168 (6th Cir. 1987); *Determining the existence of a contract*, 11 Williston on Contracts § 30:3 (4th ed. 2012) ("It is generally a question of fact for the jury whether or not a contract . . . actually exists."). And factual questions are for the district court to resolve. Fed. R. Civ. P. 52(a); *see also Cont'l Cas. Co. v. Indian Head Indus., Inc.*, 941 F.3d 828, 837 (6th Cir. 2019). Unfortunately, the district court made no findings of fact on the question whether the LOU is an enforceable contract. When a district court "fail[s] to make findings of fact essential to a proper resolution of the legal question," we must remand for it to make those findings. *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986); *see also United States v. Buchanan*, 933 F.3d 501, 518 (6th Cir. 2019) ("[I]f the district court failed to make a factual finding on a required element, we have no facts to review, and remand is the appropriate course of action."). That is the case here.

Instead of addressing the contract formation question, the district court asked only whether the LOU was extrinsic evidence that proved that the relevant CBA between the parties vested employees' retirement benefits. To be sure, the Supreme Court's cases in this area, as well as ours, have focused on whether there is "clear, affirmative language" in a CBA indicating that its general durational clause does not apply to healthcare benefits. *See Fletcher v. Honeywell Int'l, Inc.*, 892 F.3d 217, 223 (6th Cir. 2018); *M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 442 (2015). But that focus on CBAs is merely a consequence of the fact that CBAs are typically the only contract governing these types of relationships; it does not follow that only a CBA can vest rights.[3]

Here, if the LOU is a valid, standalone contract that vested benefits for retirees, then it would vest non-negotiable healthcare benefits to anyone who had retired by the day the parties signed it. *See Williams v. WCI Steel Co., Inc.*, 170 F.3d 598, 605 (6th Cir. 1999) ("While a union

---

[3] In any event, Plaintiffs also contend that the LOU itself is effectively a CBA.

may bargain away non-vested retiree benefits in favor of more compensation for active employees, it may not do such with the vested rights of its retirees."). True, the subsequent CBA, signed only a week after the LOU and containing an integration clause, offered the sole source of the parties' legal relationship when signed. *See ADR N. Am., L.L.C. v. Agway, Inc.*, 303 F.3d 653, 657 (6th Cir. 2003) ("Under Michigan's parol evidence rule, prior agreements or negotiations cannot contradict the terms of a document intended to be the final and complete expression of the parties' agreement."). But that limitation on the LOU's potential prospective force does not wipe away the possibility that the LOU vested benefits for employees who retired before the parties signed the subsequent CBA.[4] Only a determination that the parties did not form a contract that vested rights in the first place can wipe away that possibility. And that determination is not ours to make. Therefore, we must remand Plaintiffs' LOU claim to the district court.[5]

B.  THE PLAN-DOCUMENTS CLAIM

Plaintiffs argue that the plan documents independently provide for vested retirement benefits. The district court found that this claim was unlikely to succeed on the merits because the plan documents reference the CBA as a whole, so the general durational clause controls. Plaintiffs

---

[4] Nor does it necessarily resolve the possibility that the LOU vested benefits for non-CBA employees who may not be covered by the subsequent CBA.

[5] On remand, the district court must determine whether Plaintiffs are likely to succeed in showing that the LOU is a contract that vests retirees' rights. In doing so, it should closely consider at least two aspects of the LOU. First, whether the parties' decision to sign a CBA with an integration clause just a week later without any mention of the LOU shines light on their understanding of whether the LOU was a binding contract. Second, whether its use of the word "acknowledge," in combination with the era in which it was signed, suggests it does not represent a promise to vest benefits to retirees for life. At the time the parties signed the LOU, the shadow of our now-repudiated *Yard-Man* inferences hung over them. Those inferences effectively meant that an employer that provided retiree benefits could rarely avoid a court finding that the employer intended to vest the benefits for life. *See IUE-CWA v. Gen. Electric Co.*, 745 F. App'x 583, 588–93 (6th Cir. 2018) (detailing the saga of the *Yard-Man* inferences and their ultimate and repeated rejection by the Supreme Court). So the parties' past CBAs here provided a likely source for them to acknowledge vesting from the mere presence of retirement benefits. The district court must determine whether the LOU merely acknowledged the legal regime under which it operated or whether it rose to a promise to vest retirees with benefits for life. The district court may also want to consider whether those who signed the LOU on behalf of Defendants had actual or apparent authority to do so.

argue that the district court's interpretation of the plan documents is contrary to the plain language. Plaintiffs are correct.

The Retiree Health Benefit Plan states that a participant whose benefits are subject to a CBA "shall become vested in the post-retirement health benefit described in Article V in accordance with the terms of the relevant sections of pertinent collective bargaining agreement(s), copies of which are attached as Schedule A." Similarly, it states that a participant whose benefits are not subject to a CBA "shall become vested in the post-retirement health benefit described in Article V in accordance with the terms of Schedule B." Plaintiffs are correct that the final clause of the former—"copies of which are attached as Schedule A"—must modify "relevant sections of pertinent collective bargaining agreement(s)." This means that it does not refer to the CBAs in their entirety but only to the sections that are attached. It also distinguishes our decision in *Gallo v. Moen Inc.*, 813 F.3d 265 (6th Cir. 2016). There, we construed language in a plant closing agreement that healthcare benefits would continue "as indicated under the Collective Bargaining Agreement" to refer to the whole CBA. *Id.* at 273. But here, the final clause specifies that the relevant sections of the CBA are those attached in Schedule A; there is no reference to the CBAs as a whole. Similarly, the latter sentence concerning non-CBA employees does not reference the CBAs at all. Therefore, Plaintiffs are correct that the Retiree Health Benefit Plan does not incorporate the CBAs' general durational clauses.

Still, Plaintiffs have not shown that the language, read in conjunction with the referenced portions of the CBAs, contains "clear, affirmative language" of vesting. *Fletcher*, 892 F.3d at 223. The Retiree Health Benefit Plan language states that a member "shall become vested . . . in accordance with the terms of the relevant sections" of the CBAs attached in Schedule A or, for non-CBA employees, "in accordance with the terms of Schedule B." Neither Schedule A nor

Schedule B, however, contains terms that provide for vesting. Plaintiffs appear to assume that the "eligibility requirements" listed in the schedules constitute the terms, that is, if a retiree satisfies the conditions then his or her benefits are vested. But this is not what the language says. It does not say that benefits "shall become vested upon satisfaction of the eligibility requirements" or "shall become vested in accordance with fulfillment of the terms of the relevant sections" or some other formulation that clearly indicates vesting occurs when the listed eligibility requirements are met. In other words, finding vesting requires an analytical jump between the language of the Retiree Health Benefit Plan and the referenced schedules. The Supreme Court has made clear that we may not make that jump. *See Tackett*, 574 U.S. at 442 (requiring a CBA to provide "in explicit terms" that benefits vest (quoting *Litton Fin. Printing Div. v. NLRB.*, 501 U.S. 190, 207 (1991)).[6] Accordingly, Plaintiffs have not established "clear, affirmative language" of vesting. *Fletcher*, 892 F.3d at 223.

This conclusion is supported by the reservation-of-rights language in the Retiree Health Benefit Plan, which allows the employer to make amendments to the plan or "terminate the [p]lan at any time." We have stated on numerous occasions that reservation-of-rights provisions are inconsistent with vesting. *Gallo*, 813 F.3d at 270 ("How can one simultaneously say that healthcare benefits are 'vested' but may be 'cancel[ed]' by the employer?" (original alteration)); *Cooper v. Honeywell Int'l, Inc.*, 884 F.3d 612, 621 (6th Cir. 2018) ("[A reservation-of rights clause is] manifestly inconsistent with vesting; by definition, vested benefits may not be unilaterally

---

[6] This interpretation does not render the "shall become vested" language surplusage. It merely takes the words at face value; if the referenced schedules contained lifetime-vesting terms, then the language would be a clear, affirmative indication of vesting. Indeed, testimony at the hearing on the motion for a preliminary injunction established that the eligibility and funding levels in the schedules were subject to change. Given the possibility of changing the schedules, the parties could have included vesting terms. In addition, this interpretation is consistent with reading the two documents together. *See Forge v. Smith*, 580 N.W.2d 876, 881 (Mich. 1998). If the Retiree Health Benefit Plan itself used language identical to that in Schedules A and B, that similarly would not show the required language. Reading the documents together does not remove the clear, affirmative-vesting-language requirement. *See Fletcher*, 892 F.3d at 223.

terminated."); *IUE-CWA*, 745 F. App'x at 594 ("The reservation-of-rights clause . . . strongly implies an intention *not* to vest."). Therefore, based on the lack of clear vesting language in the plan documents and in the reservation of rights clauses in those documents, Plaintiffs have not established that the plan-documents claim is likely to succeed on the merits.

III.

Accordingly, we vacate the district court's denial of Plaintiffs' motion for a preliminary injunction and remand for further proceedings consistent with this opinion. As Defendants note, the district court currently has before it a motion for judgment on the pleadings. If it determines that it can resolve the case on the pleadings, then it should do so (in which case Plaintiffs' motion for a preliminary injunction would be moot). If it instead revisits the preliminary injunction question, it should also make a finding on the question of irreparable harm that does not turn on its determination of the likelihood of success on the merits. As we have noted, "[i]rreparable harm is an 'indispensable' requirement for a preliminary injunction, and 'even the strongest showing' on the other factors cannot justify a preliminary injunction if there is no 'imminent and irreparable injury.'" *Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 392 (6th Cir. 2020) (quoting *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 326–27 (6th Cir. 2019)). Thus, an independent factual finding on the likelihood of irreparable harm—rather than one that is bound up in the likelihood-of-success-on-the-merits inquiry, as here—will aid appellate review.